## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| JAMES E. MOSES, JR.,<br>          Plaintiff, | No. 3:17-cv-1936 (SRU) |
| v. | |
| ST. VINCENT'S SPECIAL NEEDS<br>CENTER, INC.,<br>          Defendant. | |

### RULING AND ORDER ON MOTION FOR SUMMARY JUDGMENT

James Moses Jr., proceeding *pro se*, filed the instant suit against his former employer, St. Vincent's Special Needs Center, Inc. Moses generally alleges unlawful discrimination on the basis of gender and retaliation in violation of Title VII of the Civil Rights Act (42 U.S.C. § 2000e et seq.). He additionally raises a claim of common law defamation on the basis of statements made during a fact-finding conference held before the Connecticut Commission on Human Rights and Opportunities. St. Vincent's has moved for summary judgment on all counts. For the following reasons, the motion is **denied** in part.

### I.        Standard of Review

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits…show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A court reviewing a summary judgment motion must construe all facts in the light most favorable to the nonmoving party, and resolve all ambiguities and draw all reasonable inferences against the moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

When a motion for summary judgment is properly supported by documentary and testimonial evidence, however, the nonmoving party may not rest upon the mere allegations or denials of the pleadings and instead must present sufficient probative evidence to establish a genuine issue of material fact. *Goenaga v. March of Dimes Birth Defects Found.*, 51 F.3d 14, 18 (2d Cir. 1995). "Once the moving party has made a properly supported showing sufficient to suggest the absence of any genuine issue as to a material fact, the nonmoving party, in order to defeat summary judgment, must come forward with evidence that would be sufficient to support a jury verdict in his favor." *Id.* To present a "genuine" issue of material fact, there must be contradictory evidence "such that a reasonable jury could return a verdict for the non-moving party." *Anderson*, 477 U.S. at 248. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.* Where conflicting evidence exists with regard to a material fact, summary judgment is improper. *See Associated Metals & Minerals Corp. v. M/V Arktis Sky*, 978 F.2d 47, 52 (2d Cir. 1992) (summary judgment improper where court was confronted with conflicting affidavits).

If a nonmoving party has failed to make a sufficient showing on an essential element of his case with respect to which he has the burden of proof at trial, then summary judgment is appropriate. *Celotex*, 477 U.S. at 322. "In such a situation, there can be no genuine issue as to any material fact, since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 322-23 (internal citations omitted).

## II.   Background and Procedural History

St. Vincent's operates both residential and daytime care facilities for children and adults with intellectual and physical disabilities. Def.'s Mem. Doc. No 37 at 3. Moses was hired as a

driver and program assistant by St. Vincent's in January 2010. Def.'s Local Rule 56(a)(1) Stmt. Of Facts at ¶ 1. His duties consisted of picking up clients from their homes, transporting them to the center for programming, assisting them as they participated in activities throughout the day, and driving them home in the afternoon. *Id.* at ¶¶ 9-10. Moses reported to two supervisors: Sarah O'Brien and Frances Hernandez. *Id. at* ¶ 6. Both Hernandez and O'Brien reported to Beth Jezierny, the program director. *Id.; see also* Jezierny Affidavit, Doc. No. 39. Initially, Moses did well at St. Vincent's and received a positive 90-day performance evaluation from Hernandez in April 2010.[1] *See* Def.'s Ex. D Doc. No. 37-3. From there, the parties disagree on the course of events.

i.   *Employer's Version of Events*

St. Vincent's contends that in the aftermath of that positive 90-day evaluation, Moses' performance began to decline. Def.'s Local Rule (56)(a)(1) Stmt. of Facts at ¶ 17. Specifically, St. Vincent's alleges that Moses exhibited "poor communication skills" that often resulted in "disrespectful communications to coworkers and managers." *Id.* Moses received a formal written performance evaluation in June 2011 indicating that he should "work on respectful communication with staff and standards of behavior." Def.'s Ex. E, Doc. No. 37-4. On August 16, 2011 he was issued a disciplinary warning for driving a company vehicle through a drive-thru during work hours. Def.'s Ex. F, Doc. No. 37-5. On September 11, 2011 he received a verbal reprimand (by supervisor Joan Lydem) for taking clients with him to pick up a pizza that had been delivered to the Center. Jezierny Affidavit at ¶ 6, Doc. No. 39. The following week, Moses parked his car in Lydem's assigned spot in the Center's employee parking lot. Def.'s

---

[1] I note there is some disagreement over who gave Moses that evaluation; he claims that O'Brien, not Hernandez, "facilitated" the positive review. Pl.'s Local Rule 56(a)(2) Stmt. at ¶ 16. The document (Def.'s Exhibit D) is signed by Hernandez.

Local Rule (56)(a)(1) Stmt. of Facts, at ¶ 25. When Hernandez asked him to move his car, he became "verbally offensive and confrontational" toward Hernandez. *Id.* at ¶ 25. Hernandez gave him a verbal reprimand and additionally issued a formal disciplinary report indicating that "further violation of this or any other agency policy will result in disciplinary action including termination." Def.'s Ex. H, Doc. No. 37-7.

There were no further incidents until July of 2012, when a coworker reported to Hernandez that Moses had driven a company vehicle through a stop sign with clients onboard. Def.'s Local Rule (56)(a)(1) Stmt. of Facts at ¶ 27. No formal disciplinary report was issued, but St. Vincent's claims that Hernandez spoke with Moses about the incident and placed him on "notice of the need to improve." *Id.* at ¶ 28.

The final incident preceding Moses' termination occurred on September 5, 2012. *Id.* at ¶ 30. During a meeting with Hernandez where he was assigned a different client pick-up route, Moses requested prior approval to take a day off for an upcoming court appearance. When Hernandez indicated that he would need to provide documentation of the court date in order to be approved in advance to take the day off, Moses raised his voice and spoke to Hernandez in an "extremely disrespectful" manner. *Id.* at ¶ 34. Hernandez consulted with Jezierny and Human Resources that same day, and they made the decision to terminate his employment. *Id.* at ¶ 41. However, St. Vincent's waited to inform Moses of the decision so that a security guard could be present at the meeting. *Id.* at ¶ 42.

On September 7, 2012, Moses arrived at work without his badge, and reported to Hernandez' office. *Id.* at ¶ 45. A female employee was in the office at the time, and Moses asked Hernandez if the female employee had been given more favorable client pick-up route than the one that he had been assigned. *Id.* at ¶ 48. During that conversation, Moses raised concerns about

discrimination on the basis of gender. *Id.* at ¶ 49.  Later that same day, St. Vincent's informed

Moses of the decision to terminate his employment. *Id.* at ¶ 43.

Finally, St. Vincent's asserts that the sole alleged defamatory statement was made during

a CHRO fact-finding conference. *Id.* at ¶ 56.

ii.     *Moses' Version of Events*

Moses maintains that his performance did not decline after his initial 90-day evaluation.

Pl.'s Local Rule 56(a)(3) Stmt. Of Facts at ¶ 21. He points to applications to transfer to another

position within St. Vincent's that he filed in 2012, noting that in order to be eligible to even

apply for a transfer, his conduct had to "meet or exceed" company standards. *Id.* at ¶ 21.

With regard to the disciplinary incidents cited by St. Vincent's, Moses claims generally

that each allegation is "unfounded." *Id.* ¶ 32. Specifically, he asserts: he never drove a vehicle

through a McDonald's drive-thru[2]; never engaged in insubordinate or unprofessional behavior

while on company time; was on his lunchbreak and therefore not subject to discipline for the

September 11, 2011 incident; was permitted to park in any spot, because parking was "first come

first served" and therefore he violated no rules by parking in Lydem's parking space on

September 16, 2011; did not drive through stop sign on company time; and did not raise his

voice or speak to Hernandez in a confrontational manner during the September 5, 2012

conversation. Pl.'s Local Rule 56(a)(2) Stmt. of Facts at ¶¶ 17-39.

Moses asserts those disciplinary incidents were instead part of a "continual aggressive

pattern of actions against him [that was] discriminatory." *Id.* at ¶ 48. He alleges that Hernandez

gave him more onerous work assignments than female employees, including management of the

---

[2] Moses concedes that he did stop at McDonalds (though did not go through the drive-thru) to use the restroom on "company time." *Id.* at ¶ 19.

supply room and the new route assignment, which involved a client with "behavior issues." *Id.* at ¶¶ 54, 38. He additionally claims that he was improperly disciplined when he was "not on company time," and that female employees were exempted from discipline. *Id.* at ¶ 49.

Moses contends that he explicitly complained to Hernandez about discriminatory treatment on September 7, 2012 when he told Hernandez that he "believed she was discriminating against him" on the basis of gender. Moses Affidavit at ¶ 13, Doc. No. 45-2. "I said you were discriminating against me because you are giving the female workers, my female co-workers lighter workloads and assignments, easier work assignments than you are giving me." Doc. No. 37-10 (Moses Dep.) at 226: 9-15.

He additionally disputes that the decision to fire him was made on September 5, 2012. He states that he was the only employee to receive training for the new client pick-up route after that date, indicating that St. Vincent's had not yet made the decision to fire him. Pl.s' Local Rule 56(a)(3) Stmt. of Facts ¶¶ 23-26. He notes that the termination notice (Def.'s Exhibit I, Doc. No. 37-8) does not provide a specific date of termination. Pl.s' Local Rule 56(a)(2) Stmt. of Facts at ¶ 41. Accordingly, Moses asserts that the termination decision was made on September 7, 2012 in retaliation for his complaint that morning about discriminatory treatment.

Moses claims that at the CHRO fact-finding conference, Hernandez made defamatory statements about his conduct during the previously identified disciplinary incidents and the September 5, 2012 meeting. Pl.'s Rule 56(a)(3) Statement ¶ 32; Am. Compl. Doc. No. 10.

*iii.   Procedural History*

On November 19, 2012, Moses dual-filed an administrative complaint with the CHRO and EEOC, alleging that he was discriminated against on the basis of sex with regard to the terms and conditions of employment and with respect to his discharge. Def.'s Local Rule 56(a)(1)

Statement of Facts ¶ 57; *see also* Defs. Ex. J Doc. No. 37-9. Although neither party provides the full record of the administrative proceedings, Moses appends a Right to Sue Letter issued by the EEOC on January 12, 2018. Doc. No. 10 (Pl.'s Exhibit C). The letter indicates that the EEOC has adopted the findings of the CHRO. *Id.*

On November 20, 2017, Moses, proceeding *pro se*, filed the instant complaint against St. Vincent's. He subsequently filed an amended complaint on February 5, 2018. In the original and amended complaint, Moses alleges: (1) discrimination on the basis of gender in violation of Title VII; (2) unlawful retaliation in violation Title VII; and (3) defamation/slander.[3] He seeks backpay, unspecified injunctive relief, money damages and reinstatement to his former position.[4] *See* Compl. Doc. No. 1 at 3.

On April 14, 2020, following the close of discovery, St. Vincent's moved for summary judgment on all counts. Moses filed a request for additional damages the same day, reiterating the claim of defamation and restating a request for compensatory and punitive damages.[5] St. Vincent's opposed the motion, claiming that permitting the amendment at such a late stage

---

[3] Moses, proceeding *pro se*, does not number or specify these counts. The above characterization of the allegations is drawn from the motion to dismiss, but I agree that the general framing and numbering of Moses' allegations accurately reflects statements in his original and amended complaint.

[4] Although the damages request raised in the original complaint is omitted from the first amended complaint, I will consider it here. *See, e.g., Olutosin v. Lee*, 2016 U.S. Dist. LEXIS 64661, at *1 n.1 (S.D.N.Y. May 16, 2016) ("[t]hough an amended complaint typically supplants rather than supplements a prior complaint, in the case of *pro se* plaintiffs, courts typically consider allegations in both an original and amended complaint.") (collecting cases).

[5] Though the document is titled "added damages request," it appears to be a third amended complaint. I agree with St. Vincent's that because the apparent amended complaint was untimely filed, because Moses did not seek leave to amend and because this amendment comes over two years after Moses initiated this action, allowing the amendment at this stage would be unduly prejudicial. Moses has additionally offered no explanation for the extensive delay in seeking to amend the complaint. *See Cresswell v. Sullivan & Cromwell*, 922 F.2d 60, 72 (2d Cir. 1990) ("The court plainly has discretion, however, to deny leave to amend where the motion is made after an inordinate delay, no satisfactory explanation is offered for the delay, and the amendment would prejudice the defendant.)." I note additionally, however, that the proposed amendments are substantially the same as the claims raised in the previous amended complaint, and that although the damages request is more specifically explained, the amount sought appears to be the same (though delineated differently). *See* Doc. No. 1 (seeking 25 million in compensatory and punitive damages as well as additional unspecified monetary relief); Doc. No. 41 (seeking 250,000 in compensatory damages and 25 million in punitive damages). Additionally, to the extent Moses seeks to add a claim of slander in his proposed second amended complaint, I have already considered that claim in the analysis of his claim of defamation in this order.

would be unduly prejudicial. Def.'s Objection to Pl.'s Added Damages Req. (Doc. No. 42) at 1.

On May 18, 2020 Moses filed a response to the motion for summary judgment. St. Vincent's

filed a reply to the response on June 15, 2020. Moses filed a reply on July 13, 2020.

I heard oral arguments on the motion on November 2, 2020. Following the hearing, both

parties submitted additional exhibits, including an affidavit and an audio recording of the CHRO

fact-finding conference that took place on June 28, 2016.

## III.   Discussion

### 1.   Discriminatory Discharge in Violation of Title VII

Claims of gender discrimination in violation of Title VII are analyzed under the familiar

burden shifting analysis articulated in *McDonnell Douglas Corp v. Green*, 411 U.S. 792 (1973).

To establish a prima facie case of gender discrimination, a plaintiff must show (1) he is a

member of a protected class; (2) he performed job duties in a satisfactory manner; (3) he suffered

an adverse employment action, including termination from a job; and (4) the circumstances

surrounding that adverse action give rise to an inference of discrimination. *Demoret v. Zegarelli*,

451 F.3d 140, 151 (2d Cir. 2006). "The plaintiff's burden of establishing a prima facie case of

employment discrimination is not onerous. Direct evidence is not necessary, and a plaintiff

charging discrimination against an employer is usually constrained to rely on the cumulative

weight of circumstantial evidence." *Luciano v. Olsten Corp.*, 110 F.3d 210, 215 (2d Cir. 1997)

(internal citations omitted).

If a plaintiff establishes a prima facie case, the burden shifts to the defendant employer to

provide a legitimate, non-discriminatory reason for the adverse action. *Id.* "The defendant need

not persuade the court that it was actually motivated by the proffered reasons. It is sufficient if

the defendant's evidence raises a genuine issue of fact as to whether it discriminated against the

plaintiff." *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254 (1981) (internal citations omitted). If a defendant employer meets that burden, "the burden shifts back to the plaintiff to prove discrimination, for example, by showing that the employer's proffered reason is pretextual." *Demoret*, 451 F.3d at 151. "At that point, the plaintiff has the opportunity to demonstrate that defendant's articulated reason for its decision is in fact a pretext for discrimination and retains the ultimate burden of persuasion to demonstrate by a preponderance of the evidence that the challenged employment decision was the result of intentional discrimination." *Luciano*, 110 F.3d at 215. A motion for summary judgment may be defeated where "a plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated." *Byrnie v. Cromwell*, *Bd. of Educ.*, 243 F.3d 93, 102 (2d Cir. 2001) (internal citations and quotation marks omitted).

St. Vincent's argues that Moses has failed to establish a prima facie case of gender discrimination. In the alternative, St. Vincent's contends that Moses has failed to establish that its legitimate, non-discriminatory reason for termination is pretextual. I agree with St. Vincent's.

     *i.*    *Prima Facie Case*

It is undisputed that Moses belonged to a protected class (male) and that he initially performed his job duties in a satisfactory manner. In support of his claim of gender discrimination, Moses alleges that he suffered three distinct adverse employment actions under circumstances giving rise to an inference of discrimination on the basis of gender, including: (1) reassignment of his client pick-up route and assignment to manage the supply room; (2) repeated oral and written disciplinary warnings and; (3) termination. St. Vincent's argues that Moses has failed to establish that either the assignments or warnings rise to the level of adverse employment

actions and additionally that Moses failed to meet his burden of establishing that his dismissal

occurred under circumstances giving rise to an inference of discrimination. I consider each

alleged adverse employment action in turn.

       *a.*      *Route Change and Supply Room*

Moses contends that he was assigned the task of managing the Center's supply room, and

additionally was assigned the most onerous client pick-up route on September 5, 2012 by

Hernandez. Doc. No. 37-10 (Moses Dep. P. 254: 18-22, 253: 13-14); Pl's Local Rule 56(a)(2)

Stmt. of Facts at ¶ 53. With regard to the new route assignment, Moses claims that it was both

the "longest route" and "had a rider with very bad behaviors." *Id.* at ¶ 53. With regard to the

supply truck, Moses merely claims that he was "assigned to do the supply truck" whereas female

employees were not. *Id.* at ¶ 54.

An adverse employment action is defined as a materially adverse change in the terms and

conditions of employment that rises above the level of "mere inconvenience." *Terry v. Ashcroft*,

336 F.3d 128, 138 (2d Cir. 2003). Examples of materially adverse changes include termination,

demotion, a material loss of benefits, "or other indices…unique to a particular situation." *Id.*

(internal citations omitted). In some cases, a "disproportionately heavy workload" or receipt of

undesirable assignments may rise to the level of an adverse employment action. *Feingold v. New*

*York*, 366 F.3d 138, 153 (2d Cir. 2004). In order to constitute an adverse employment action,

however, "the receipt of undesirable assignments must be accompanied by a material detriment

to an employee's working conditions." *Henry v. NYC Health & Hosp. Corp.*, 18 F. Supp. 3d 396,

406 (S.D.N.Y. 2014). "To be materially adverse a change in working conditions must be more

disruptive than a mere inconvenience or an alteration of job responsibilities*." Galabya v. New*

*York City Bd. of Educ.*, 202 F.3d 636, 640 (2d Cir. 2000) (internal quotation marks omitted).

Absent such a detriment, an undesirable assignment does not qualify as an adverse employment action.

Although Moses indicates that an assignment to the supply truck was undesirable, he does not set forth sufficient evidence that the assignment had any material detriment on the overall conditions of his employment. Similarly, even if the new client pick-up route was indeed more onerous than that of another coworker's, that isolated assignment alone is insufficient to qualify as an adverse employment action.

Moreover, even if he were to establish that such an assignment constituted an adverse employment action, he sets forth no evidence to raise an inference that those assignments were the product of discrimination on the basis of gender. Although he states that female employees were given less onerous work assignments, that conclusory statement alone is insufficient to establish that he was treated "less favorably than a similarly situated employee outside his protected group." *Ruiz v. County of Rockland*, 609 F.3d 486, 493 (2d Cir. 2010) (internal citations omitted). "The standard for comparing conduct requires a reasonably close resemblance of the facts and circumstances of plaintiff's and comparator's cases, rather than a showing that both cases are identical. In other words, the comparator must be similarly situated to the plaintiff in all material respects." *Id.* at 494 (quoting *Shumway v. United Parcel Serv., Inc.*, 118 F.3d 60, 64 (2d Cir. 1997)).

Here, Moses points only to the allegedly more favorable route assignment of one female coworker ("Melanie" or "Melody")[6] who "had the same work hours." Def.'s Ex. K, Doc. No. 37-10 (Moses Dep. P. 215: 22). Without more, that statement is insufficient to establish that employees outside his protected group were given easier tasks or treated in a substantively

---

[6] Moses refers to her as both Melody and Melanie in the deposition and does not provide a last name.

different manner.  With regard to the assignment to manage the supply truck, he does not offer

any evidence of similarly situated female employees who were given easier tasks. Pl.'s Local

Rule 56(a)(2) Stmt. of Facts at ¶ 54. Accordingly, Moses has failed to establish that either the

route change or supply room assignment were adverse employment actions, or that either arose

under circumstances supporting an inference of discrimination.

       *b.*     *Disciplinary Actions*

       Moses claims that the disciplinary warnings he received constituted adverse employment

actions. Pl.'s Mem. Doc. No. 45-1 at 13. Although verbal and written reprimands can constitute

adverse employment action under some circumstances, an employee must suffer additional

negative consequences as a result of the reprimand. *Johnson v. Conn., Dep't of Corr.*, 392 F.

Supp. 2d 326, 340 (D. Conn. 2005); *see also Stembridge v. City of New York*, 88 F. Supp. 2d

276, 283 (S.D.N.Y. 2000) ("The reprimand contained a warning that repetition of improper

behavior could result in disciplinary action but contained no indication of any planned discipline

or further action. Thus, a rational factfinder would have no basis for concluding that plaintiff

suffered any actionable harm as a result of the reprimand."); *see also Bowles v. New York City

Transit Auth.*, 2006 U.S. Dist. LEXIS 32914, *34 (S.D.N.Y. 2006) ("most courts that have faced

the issue have decided that an unrealized threat of discipline or termination is not actionable

under Title VII").

       Although the disciplinary notices issued to Moses each indicate "further violations of this

or any other agency policy will result in disciplinary action, including termination," Moses does

not claim that he suffered any additional negative consequences as a result of the reprimands. *See*

Def.'s Ex. F, H, Doc. No. 37-5, 37-7. Instead, he alleges only that he received the warnings.

Without more, those disciplinary incidents, even if unfair or unreasonable, are insufficient to rise

to the level of adverse employment actions. See *Costello v. New York State Nurses As'n*, 783 F. Supp. 2d 656, 672 (S.D.N.Y. 2011) ("Although reprimands and close monitoring may cause an employee embarrassment or anxiety, such intangible consequences are not materially adverse alterations of employment conditions.") (internal citations omitted).

Moreover, even if Moses could establish that the reprimands constituted adverse employment actions, he has not established that any of those incidents occurred under circumstances giving rise to an inference of discrimination. Although he repeatedly claims that "no female co-worker has ever been disciplined for their actions while not on company time", he provides no evidence of disciplinary records of any similarly situated female employees, indicating only that St. Vincent's has not provided records showing that any female employees *were* similarly disciplined. Pl.'s Local Rule 56(a)(2) Stmt. at ¶ 26; Moses Affidavit at ¶ 6; Pl.'s Reply Doc. No. 45. Such conclusory statements unsupported by record evidence are insufficient to establish an inference of discrimination. Moses has therefore failed to establish that the reprimands were adverse employment actions or that they occurred under circumstances suggesting discriminatory intent on behalf of St. Vincent's.

> c. *Termination*

Termination clearly and unequivocally constitutes an adverse employment action. *See, e.g., Terry*, 336 F.3d at 138. Moses has failed to establish, however, that his termination occurred under circumstances giving rise to an inference of discrimination.

Moses claims that the incidents cited by St. Vincent's as the basis for his termination were false. Pl.'s Mem.  Doc. No. 45-1 at 3; Affidavit of James Moses Doc. No. 45-2. "The allegations of Insubordination, Inappropriate behavior, Confrontational, Unprofessionalism & Violating traffic laws while operating a company vehicle are All unfounded." *Id.* at ¶ 2. He additionally

argues that his termination on the basis of misconduct that did not occur on "company time" raises an inference of discrimination because no female employees were disciplined or terminated for similar conduct. *Id.*

As discussed above, conclusory statements that female employees were not similarly disciplined are insufficient to raise an inference of discriminatory treatment. However, less favorable treatment than a similarly situated employee is not the only way to "establish an inference of discriminatory intent; such an inference can be drawn in other circumstances, including, *inter alia*…the sequence of events leading to the plaintiff's discharge." *Ofoedu v. St. Francis Hosp. & Med. Ctr.,* 2006 U.S. Dist. LEXIS 68704, *49-50 (D. Conn. 2006), *adhered to on reconsideration*, 2006 U.S. Dist. LEXIS 109272 (D. Conn. Nov. 6, 2006), *aff'd*, 282 F. App'x 930 (2d Cir. 2008) (internal citations omitted). Additionally, a court "must be alert to the fact that employers are rarely so cooperative as to include a notation in the personnel file that the firing is for a reason expressly forbidden by law." *Ramseur v. Chase Manhattan Bank*, 865 F.2d 460, 464-65 (2d Cir. 1989) (internal citations omitted). Accordingly, the "absence of direct or explicit evidence…is not fatal." *Id.* at 465. An inference of discrimination can be established by a showing that the employer continued to "seek applicants from persons of the plaintiff's qualifications to fill that position"; "the employer's criticism of the plaintiff's performance in ethnically degrading terms"; or "invidious comments about others in the employee's protected group." *Ofoedu*, 2006 U.S. Dist. LEXIS 68704 at *49-50.

Although Moses' sworn affidavit creates a genuine dispute over what led to some of the disciplinary instances preceding termination, he does not offer any evidence that either the disciplinary actions by Hernandez or the termination decision were instead motivated by discriminatory animus. Without additional facts indicating discriminatory intent (such as

comments by Hernandez, replacement by a female employee after termination or evidence that female employees were not similarly disciplined) Moses has not met his burden in establishing that the termination took place under circumstances giving rise to an inference of termination. *See Shumway*, 118 F.3d at 65 ("sweeping allegations" of failure to discipline similarly situated male employees for misconduct insufficient to establish inference of discrimination).

        *ii.*    *Pretext*

     Moses has not set forth sufficient facts to establish a prima facie case of gender discrimination. Even if he had met that burden, however, he cannot demonstrate that the proffered reasons for his work assignments, disciplinary warnings or termination were pretextual.

     In order to demonstrate pretext, a plaintiff must establish that "a discriminatory reason more likely motivated the employer." *Ofoedu*, 2006 U.S. Dist. LEXIS 68704, at *56 (citing *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 256 (1981)). "[D]isbelief of the reasons put forward by the defendant….may, together with elements of the prima facie case, suffice to show intentional discrimination." *Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 147 (2000) (internal citations omitted). Although a plaintiff may rely in part on "the falsity of the employer's explanation" to establish pretext, "it is not enough…to *dis*believe the employer; the factfinder must *believe* the plaintiff's explanation of intentional discrimination." *Id*. In examining an employer's reason for termination, "courts may -- as they often must -- rely on the evaluations rendered by supervisors." *Meiri v. Dacon*, 759 F.2d 989, 995 (2d Cir. 1985) (internal citations omitted).

     Here, St. Vincent's claims that the repeated reprimands issued to Moses, as well as his ultimate termination, were the result of a pattern of ongoing insubordination, confrontational and

inappropriate behavior. *See* Def.'s Local Rule 56(a)(1) Stmt. at ¶ 40. St. Vincent's additionally disputes that either the new route assignment or supply truck assignment were onerous, outside Moses' job description or differed from tasks assigned to female employees. *Id.* at ¶ 38. To support those claims, St. Vincent's proffers Jezierny's affidavit as well as Moses' disciplinary reports spanning 2010-2012. St. Vincent's has therefore met its burden of production in offering a legitimate and non-discriminatory reason for both repeated disciplinary warnings and ultimate termination.

In an attempt to demonstrate pretext, Moses merely reiterates the claims that the disciplinary warnings were unfounded, that female coworkers received more favorable assignments and were not disciplined for similar conduct and that the cited basis for his termination was false. Even assuming, however, that allegations of unprofessionalism and insubordination are unfounded or that Moses' work assignments were undesirable, there is simply no evidence that any of those actions were motivated instead by discriminatory intent. *See Reeves*, 530 U.S. 133, 147 ("proof that the employer's proffered reason is unpersuasive, or even obviously contrived, does not necessarily establish that the plaintiff's proffered reason…is correct.") (internal citations omitted).

Because Moses has not provided sufficient evidence to support the elements of a prima facie case, much less demonstrated pretext, the motion for summary judgment is **granted** with respect to the claim for discriminatory discharge.

2.   **Retaliation in Violation of Title VII**

To establish a prima facie case of unlawful retaliation in violation of Title VII, a plaintiff must demonstrate that (1) the plaintiff was engaged in protected activity; (2) the defendant employer was aware of that activity; (3) the employer took adverse action against the plaintiff;

and (4) there was a causal connection between the protected activity and that adverse action. *Kelly v. Howard I. Shapiro & Assocs. Consulting Engineers, P.C.,* 716 F.3d 10, 14 (2d Cir. 2013) (internal citations omitted). If the plaintiff establishes a prima facie case of retaliation, "the burden of production shifts to the employer to demonstrate that a legitimate, nondiscriminatory reason existed for its action." *Summa v. Hofstra Univ.*, 708 F.3d 115, 125 (2d Cir. 2013) (internal quotation marks omitted). If the employer makes such a showing, "[t]he burden shifts back to the plaintiff to establish, through either direct or circumstantial evidence, that the employer's action was, in fact, motivated by discriminatory retaliation." *Gomez v. Metro. Dist.*, 10 F. Supp. 3d 224, 235 (D. Conn. 2014) (internal citations omitted).

St. Vincent's moves for summary judgment on Moses' claim of unlawful retaliation, arguing that Moses has failed to establish a prima facie case of retaliation and additionally cannot establish pretext. Finally, St. Vincent's notes in a footnote that the claim should be dismissed on the grounds that Moses failed to raise it with the CHRO or EEOC and therefore has failed to exhaust his administrative remedies with respect to that claim. I address each of those arguments in turn.

i.    *Exhaustion*

Before filing a Title VII claim in federal court, a plaintiff must exhaust available administrative remedies, including filing a complaint with the EEOC. *Deravin v. Kerik,* 335 F.3d 195, 200 (2d Cir. 2003). An exception to the exhaustion requirement exists where a claim first raised in federal court is "reasonably related" to claims raised at the administrative level. *Id.* "A claim is considered reasonably related if the conduct complained of would fall within the scope of the EEOC investigation which can reasonably be expected to grow out of the charge that was made." *Id.* at 200-01 (internal citation omitted).  Generally, where a claim arises out of the same

allegedly discriminatory conduct on which the original EEOC claim was based, it will be considered to be reasonably related under the "loose pleading" exception to the exhaustion requirement. *Id.*

St. Vincent's moves for dismissal of the unlawful retaliation claim on the grounds that Moses failed to raise it during the CHRO proceedings, and additionally fails to proffer that his retaliation claim would have fallen within the scope of the EEOC investigation. Def.'s Mem., Doc. No. 37 at n. 2.[7] Although Moses does not specifically state that the retaliation claim is reasonably related to his claim of gender discrimination, his original CHRO complaint does allege both wrongful termination as well as discrimination on the basis of gender in the terms and conditions of employment. Def.'s Ex. J., Doc. No. 37-9. Given that Moses alleges that he was terminated in retaliation for raising the alleged instances of gender discrimination with Hernandez, the retaliatory termination claim could reasonably be expected to arise out of the EEOC investigation into those same gender discrimination claims.[8] *See, e.g., Amin v. Akzo Nobel Chems., Inc.,* 282 F. App'x 958, 961 (2d Cir. 2008) ("the EEOC investigation into [plaintiff's] claims that he was discharged on the basis of his national origin… would reasonably be expected to assess whether his complaints…of discrimination on that basis played a role in [defendant's] decision to discharge him"). Accordingly, I find that Moses' claims fall within the exception to the exhaustion requirement and therefore will not dismiss the retaliation claim for failure to raise it before the CHRO.

---

[7] Moses claims that he raised his claim of unlawful retaliation at the "First Reconsideration" granted by the CHRO. Pl.'s Mem. Doc. No. 45-1 at 19. However, he does not append any record of the fact-finding sessions, and it is therefore difficult to determine what part of the process he is describing.

[8] I note additionally that the exception to the exhaustion requirement is based in part on the recognition that "EEOC charges frequently are filled out by employees without the benefit of counsel" and that this exception is "essentially an allowance of loose pleading." *Butts v. New York Dep't of Hous. Pres. & Dev.*, 990 F.2d 1397, 1402 (2d Cir. 1993) *superseded by statute on other grounds as stated in Hawkins v. 1115 Legal Serv. Care*, 163 F.3d 684 (2d Cir. 1998). Moses' lack of representation at the administrative further supports my conclusion that his claim properly falls into the exception to the exhaustion requirement.

ii.     *Prima Facie Case*

St. Vincent's contends that Moses cannot establish a prima facie case of retaliation because he has failed to establish that he engaged in protected conduct or that there was a causal connection between that conduct and his ultimate termination.

a.   *Protected Conduct*

An employee engages in protected activity so long as the employee has a "good faith, reasonable belief that the underlying challenged activity violated the law." *Gregory v. Daly*, 243 F.3d 687, 7001 (2d Cir. 2001). The "law protects employees in the filing of formal charges of discrimination as well as in the making of informal protests of discrimination." *Id.* at 700. (internal citations omitted). Additionally, "the plaintiff need not establish that the conduct he opposed was in fact a violation of Title VII." *Manoharan v. Columbia Univ. Coll. of Physicians & Surgeons*, 842 F.2d 590, 593 (2d Cir. 1988).

Moses contends that on September 7, 2012 he complained to Hernandez about discriminatory treatment. *See* Am. Compl. Doc. No. 10 at 2, Affidavit of James Moses at ¶ 17, Def.'s Ex. Moses Dep. 226: 9-16 ("I told her it was sex. I said you were discriminating against me because you are giving the female workers, my female co-workers lighter workloads and assignments, easier work assignments than you are giving me. I went through that whole thing with her. She knew it was about sex."). St. Vincent's claims that those statements were ambiguous, lacked a good-faith basis and could not have put Hernandez on notice that Moses "was intending to complain about unlawful activity under the law." Def.'s Mem. Doc. No. 37 at 23.

Viewing the evidence in the light most favorable to Moses, he appears to have clearly articulated to Hernandez a good-faith belief that he had suffered discriminatory treatment with

regard to his workload. He additionally appears to have used language (discrimination on the basis of sex) that sufficiently put her on notice of the allegedly improper conduct.  Finally, he appends a written statement by Hernandez that appears to have been made during the CHRO proceedings (though it is not clear exactly when in the process the statement was made) in which she describes the September 5, 2012 conversation and recalls that Moses told her "I'll fix this; you are discriminating against me." *See* Pl.s Ex. A. Doc. No. 10. Although I conclude that the complained of conduct did not constitute discriminatory treatment, "[a]n employee is privileged to report and protest workplace discrimination, whether that discrimination be actual or reasonably perceived." *Matima v. Celli*, 228 F.3d 68, 78 (2d Cir. 2000). Accordingly, a reasonable juror could find that his statements to Hernandez constituted protected conduct for purpose of Title VII and that Hernandez understood them as such.

       *b.  Causation*

A plaintiff alleging retaliatory discharge in violation of Title VII must establish that retaliation was a "but-for cause of the adverse action, and not simply a substantial or motivating factor in the employer's decision." *Kwan v. Andalex Grp., LLC*, 737 F.3d 834, 845 (2d Cir. 2013) (internal citations omitted). Despite that relatively high standard, proof of causation need not be direct. "Even without direct evidence of causation, a plaintiff can indirectly establish a causal connection to support a…retaliation claim by showing that the protected activity was closely followed in time by the adverse employment action." *Id.* at 845 (internal citations omitted). The "but-for causation standard does not alter the plaintiff's ability to demonstrate causation at the prima facie stage…indirectly through temporal proximity." *Id*. Courts are permitted to "exercise their judgment about the permissible inferences that can be drawn from temporal proximity in the context of particular cases." *Smith v. Town of Hempstead Dep't of Sanitation Sanitary Dist.*

*No. 2*, 798 F. Supp. 2d 443, 458 (E.D.N.Y. 2011). Where a plaintiff establishes close temporal proximity between protected activity and adverse action, courts are more likely to find that causation has been established. *Kwan*, 737 F.3d at 845.

St. Vincent's contends that there is no evidence of a causal link between Moses' complaint to Hernandez and subsequent termination because the termination decision was made two days prior to the complaint, on September 5, 2012. Def.'s Local Rule 56(a)(1) Stmt. at ¶ 41, Def.'s Mem., Doc No. 37 at 23, Jezierny Affidavit at ¶ 10. Accordingly, St. Vincent's argues that Moses cannot show causation between the alleged complaints of discrimination and the termination decision. St. Vincent's additionally argues that there is no evidence that Jezierny or anyone involved in the termination decision other than Hernandez had knowledge of Moses' complaint of discrimination. *Id.* at 24.

Moses points to the fact that he received training for a new client pick-up route on September 6-7, 2012 to rebut the claim that the termination decision was made on September 5, 2012. He additionally notes that the notice of termination, unlike every other disciplinary document, does not provide a specific date. Pl.'s Local Rule 56(a)(2) Stmt. at ¶ 41, Affidavit of James Moses at ¶ 10. Finally, he submits a copy of the written statement Hernandez offered to the CHRO confirming that Moses complained of discrimination on September 7, 2012 to establish that at least Hernandez was aware of his complaints. *See* Pl.'s Ex. A, Doc. No. 10.

Moses' allegations that he was terminated directly after complaining of discriminatory treatment are sufficient to make out a prima facie case of retaliatory discharge. Additionally, although St. Vincent's contends that there is no evidence that Jezierny was aware of his allegations of discrimination, it is undisputed that Hernandez participated in the decision to terminate his employment. *See Holcomb v. Iona Coll.,* 521 F.3d 130, 143 (2d Cir. 2008)

(evidence that employee with improper bias played a "meaningful role" in termination decision sufficient to establish discrimination under Title VII).

        c. *Pretext*

Once an employer has set forth a legitimate, non-discriminatory reason for an adverse employment action, a plaintiff bears the burden of establishing that retaliation was the but-for cause of the termination decision. "A plaintiff may prove that retaliation was a but-for cause of an adverse employment action by demonstrating weaknesses, implausibilities, inconsistencies, or contradictions in the employer's proffered legitimate, non[] retaliatory reasons for its action." *Kwan*, 737 F. 3d at 846. Close temporal proximity between protected activity and a termination decision, however, is insufficient to establish that an employer's proffered reasons for adverse employment action are pretextual. *Id.* at 847; *see also El Sayed v. Hilton Hotels Corp.*, 627 F.3d 931, 933 (2d Cir. 2010). Close temporal proximity coupled with a showing that a proffered reason for discharge is false, however, may be sufficient to defeat summary judgment. *See, e.g., Meyers v. Medco Health Solutions, Inc.*, 2015 U.S. Dist. LEXIS 43262, *56 (S.D.N.Y. 2015) (reasonable juror could find pretext where "[p]laintiff has presented both evidence of temporal proximity and evidence from which a reasonable jury could find that defendant's proffered reason is false").

Here, St. Vincent's argues that Moses' termination came as a result of repeated instances of insubordination, disrespectful and confrontational behavior. Def.'s Mem. Doc. No. 37 at 26. Although St. Vincent's points to the history of disciplinary incidents as the legitimate non-discriminatory reason for termination, it relies heavily on Moses' allegedly aggressive and confrontational behavior at the meeting on September 5, 2012 with Hernandez as a basis for termination. *See* Def.'s Mem. Doc. No. 37 at 8; Jezierny Affidavit at ¶ 10.

Moses points to both the temporal proximity between his complaint of discrimination and the termination decision, his own sworn affidavit disputing that a confrontation occurred on September 5, 2012 and inconsistencies in St. Vincent's proffered reasons for the discharge to establish pretext. He also relies on the audio recording of the CHRO fact-finding conference, where Jezierny testified that she had no recollection of an event or confrontation between Moses and Hernandez on September 5, 2012, contradicting statements in her sworn about that incident. *See* Jezierny Affidavit, Doc. No. 39 at ¶ 10 ("Ms. Hernandez and I discussed this latest incident on September 5, 2012 and made the decision to terminate Plaintiff's employment that same day"); *see also* Supp. Affidavit of James Moses, Doc. No. 56 at ¶ 2; Audio Recording. Relying on his own affidavit and inconsistencies about that incident, Moses argues that the allegations about that final confrontation are pretext for unlawful retaliation. *See* Def.'s Mem. Doc. No. 45-1 at 14.

St. Vincent's is certainly correct that a pattern of insubordination and disrespectful or unprofessional conduct is a legitimate non-discriminatory reason for termination of an employee. Here, however, Moses has shown close temporal proximity between allegations of discrimination and his termination and has additionally pointed to inconsistencies in St. Vincent's explanation regarding why the termination decision was ultimately made. Accordingly, Moses has established that there is a genuine dispute of material fact over the circumstances of his termination sufficient to survive summary judgment. *See Kwan*, 737 F.3d at 847 ("evidence of [defendant's] inconsistent explanations for [plaintiff's] termination and the very close temporal proximity between [plaintiff's] protected conduct and her termination are sufficient to create a triable issue of fact with regard to whether the [complaint of discrimination]

complaint was a but-for cause of her termination"). The motion for summary judgment is **denied** with respect to the claim of retaliation.

### 3. <u>Defamation</u>

To state a claim for defamation under Connecticut law, a plaintiff must establish that "(1) the defendant published a defamatory statement; (2) the defamatory statement identified the plaintiff to a third person; (3) the defamatory statement was published to a third person; and (4) the plaintiff's reputation suffered injury as a result of the statement." *Gambardella v. Apple Health Care, Inc.*, 86 Conn. App. 842, 848 (2005). The tort of defamation comprises two separate torts—oral defamation, or slander, and written defamation, or libel. *Id.* at 850. Although truth is an absolute defense to a claim of defamation, "the determination of the truthfulness of a statement is a question of fact for the trier of fact." *Id.* at 851 n.6. Additionally, opinion cannot be the basis for a defamation claim. "It is well settled that expressions of pure opinion, as opposed to factual assertions, may not be the basis of a defamation action." *Colon v. Town of W. Hartford*, 2001 U.S. Dist. LEXIS 484, at *12 (D. Conn. 2001). In distinguishing a statement of fact from mere opinion, "[t]he court's task is to determine whether the words complained of, considered in the context of the entire communication and of the circumstances in which they were spoken or written, may be reasonably understood as implying the assertion of undisclosed facts justifying the opinion." *Id.* at *13-14 (internal citations omitted).

Statements made during judicial proceedings are entitled to immunity from liability for defamation. "Connecticut follows the common law rule that communications uttered or published in the course of judicial proceedings are absolutely privileged so long as they are in some way pertinent to the subject of the controversy." *Blake-McIntosh v. Cadbury Bevs., Inc.*, 1999 U.S. Dist. LEXIS 12801, at *19 (D. Conn. June 24, 1999); *see also Chadha v. Charlotte*

*Hungerford Hosp.*, 865 A.2d 1163, 1172 (2005). That privilege extends to statements made in quasi-judicial proceedings that "have powers of discretion in applying the law to the facts which are regarded as judicial or quasi-judicial, in character." *Id.* at *20. The CHRO has been recognized as a quasi-judicial body given its "discretion to decide facts and apply law," and courts have held that statements made during CHRO proceedings and investigations are therefore absolutely privileged. *Id.* at *22; *see also Digregorio v. Simko*, 1994 Conn. Super. LEXIS 599, at *9 (Conn. Super. Ct. 1994) (CHRO proceedings are quasi-judicial in nature).

Moses contends that Hernandez committed slander by depicting him as "loud, aggressive, belligerent and invading her personal space" in her testimony before the CHRO. Am. Compl. Doc. No. 20 at Item 6 ¶ IV; Def.'s Ex. K Doc. No. 37-10 (Moses Dep. 288: 1-2). St. Vincent's does not address Moses' claim in detail, instead asserting that even if a defamatory statement was made, the statement was "either true (as evidenced by Plaintiff's performance evaluations) or mere opinion, neither of which are actionable as defamation." Def.'s Mem., Doc. No. 37 at 28. St. Vincent's additionally argues that even if a defamatory statement was made, any statements are entitled to absolute immunity because the statements were made before a quasi-judicial body. *Id.*

I agree with St. Vincent's that even if Hernandez' statements were defamatory, those statements are privileged because of the context in which they were made. Accordingly, the motion for summary judgment is **granted** with respect to the claim for defamation.

### IV.    Conclusion

For the foregoing reasons, the motion for summary judgment [doc. no. 36] is **GRANTED** with respect to the claims of discriminatory discharge and defamation counts. The motion is **DENIED** with respect to the claim for retaliatory termination.

So ordered.

Dated at Bridgeport, Connecticut, this 24th day of March 2021.

/s/ STEFAN R. UNDERHILL
Stefan R. Underhill
United States District Judge